IN RE INTEREST OF RACHAEL M. AND SHERRY M., CHILDREN
UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. LISA G., APPELLANT.
603 N.W.2d 10

Filed December 3, 1999.   Nos. S-98-955, S-98-956.

Clyde F. Starrett for appellant.

Maurice A. Green, of Green Law Offices, P.C., guardian ad litem.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

WRIGHT, J.
## NATURE OF CASE
Lisa G. appeals from orders terminating her parental rights to Rachael M. and Sherry M. (the children).

## SCOPE OF REVIEW

■ The interpretation of statutes presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Winter v. Department of Motor Vehicles*, 257 Neb. 28, 594 N.W.2d 642 (1999).

■ Not only must a claimed prejudicial error be assigned, it must also be discussed in the brief of the asserting party; an appellate court will not consider assignments of error which are not discussed in the brief. *Varela v. Fisher Roofing Co.*, 253 Neb. 667, 572 N.W.2d 780 (1998).

## FACTS

On August 1, 1994, the then Nebraska Department of Social Services, now the Department of Health and Human Services (the department), received a child neglect report concerning the children, who were less than 2 weeks old. Three employees of the department responded by going to the apartment of Vernon J., who was later determined to be the father of the children. Piles of clothing were observed throughout the home. Ashtrays overflowing with cigarette butts were found in beds that were being used by the children. Other ashtrays lying throughout the apartment were also full of debris.

The department attempted to provide Lisa with voluntary services on at least two different occasions, but she refused to cooperate. In addition, the children were hospitalized twice. The second time, the children were in a dehydrated condition and had lost weight. On October 27, 1994, the department requested the county attorney to initiate proceedings to have the care, custody, and control of the children placed with the department.

On November 4, 1994, petitions were filed alleging that the children were within Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993). The Red Willow County Court, sitting as a juvenile court, ordered that the temporary custody of the children be placed with the department. In addition, Lisa was to receive basic parenting information through instruction with a family service support provider.

At an adjudication hearing on December 19, 1994, the trial court concluded that the allegations in the petitions were true in

that the children suffered from failure to thrive due to lack of proper parental care by reason of the fault or habits of Lisa and that Lisa neglected or refused to provide proper and necessary care for the health and well-being of the children. Thus, the trial court determined that it was in the best interests of the children to remain in the care, custody, and control of the department for out-of-home placement. Following adjudication, visitation and parenting education continued.

Following a hearing on January 17, 1995, the trial court ordered Lisa to undergo a medical and psychological evaluation which was to include a parenting skills evaluation. Dr. Lee Kimzey conducted a psychological examination of Lisa and concluded that her level of functioning was such that she was barely able to care for herself, let alone care for the needs of the children. Kimzey opined that Lisa appeared to be in the throes of a major depression with associated psychotic thought processing, as reflected in delusional thinking and hallucinations.

On March 3, 1995, the trial court adopted a case plan and made Vernon, the putative father, a party to the case. On May 5, an adjudication hearing was held regarding a petition filed against Vernon. The petition was based on Vernon's mental health condition indicating that he was not a fit and proper custodian for the children. Concluding that the facts in the petition were true, the trial court scheduled a dispositional hearing and requested that a case plan and court report be developed. Visitation was ordered to be continued as outlined in a case plan and court report dated February 21.

Following a physical altercation between Lisa and Vernon on June 12, 1995, Lisa severed their relationship and requested separate case plans for herself and Vernon. At a hearing on August 9, Vernon requested that his parental rights be terminated. The trial court instructed the department to investigate Vernon's request and ordered continuation of the visitation plan involving Lisa and the children.

After several review hearings concerning the parents' progress, a hearing was held on November 6, 1996, at which time the county attorney informed the trial court of his intention to file petitions to terminate Lisa's parental rights. Subsequently, the guardian ad litem for the children filed such petitions. Trial

was completed on August 12, 1998, at which time the trial court found that the children were within § 43-247(3)(a) in that they had failed to thrive because of a lack of proper parental care by the fault and habits of Lisa and that Lisa had neglected and refused to provide proper subsistence and care necessary to the health and well-being of the children. The trial court found that the parents were unable to provide proper and necessary care for the children because (1) they had failed to successfully complete counseling and the medical treatment necessary to correct mental illnesses diagnosed by qualified mental health professionals, (2) they had failed to visit the children on a regular and frequent basis necessary for the children's return to the home of a parent without causing severe trauma and stress, and (3) Lisa was unable to provide an adequate home with adequate care for the children and their two siblings. The trial court noted that numerous efforts, including psychological, medical, and educational guidance, had failed to give the parents the skills and ability to provide proper and necessary care for the children and to provide a safe, stable, and permanent environment for the children. Based on these findings, the trial court ordered that the parental rights of Lisa and Vernon be terminated.

## ASSIGNMENTS OF ERROR

Lisa asserts that the trial court erred (1) in allowing the guardian ad litem to file pleadings and participate in the trial in an adversarial fashion even after objection; (2) in finding clear and convincing evidence to terminate her parental rights; (3) in not requiring a written determination that continuation in the home would be contrary to the children's welfare before the court ordered that the children be removed from their home, which was alleged to be unconstitutional; (4) in not requiring the department to situate the children nearer to Lisa's home after her move to Fairfield; and (5) in not making reasonable efforts to reunify the family, as required by law.

## ANALYSIS

We first address whether the trial court erred in allowing the guardian ad litem to file the petitions to terminate parental rights and then proceed to try the case as an attorney for the children.

Lisa relies on *Betz v. Betz*, 254 Neb. 341, 575 N.W.2d 406 (1998), to support her claim that a guardian ad litem may be an attorney, but an attorney who performs the functions of a guardian ad litem does not act as an attorney and is not to participate in the trial in an adversarial fashion such as calling or examining witnesses or filing pleadings or briefs.

*Betz* is clearly distinguishable because it involved a guardian ad litem in a divorce proceeding who was appointed pursuant to Neb. Rev. Stat. § 42-358 (Cum. Supp. 1996). In *Betz*, we held that when making the appointment of a guardian ad litem or an attorney to represent the interests of a minor pursuant to § 42-358 in forums other than the juvenile court, the appointing court, in the order making the appointment, shall specify whether the person appointed is to act as a guardian ad litem or as an attorney pursuant to § 42-358. One person may not serve in both capacities.

Here, the actions of the guardian ad litem are governed by Neb. Rev. Stat. § 43-272.01(2) (Cum. Supp. 1996), which states that the guardian ad litem "(e) [m]ay present evidence and witnesses and cross-examine witnesses at all evidentiary hearings . . . and (h) [m]ay file a petition in the juvenile court on behalf of the juvenile, including a supplemental petition as provided in section 43-291."

The interpretation of statutes presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Winter v. Department of Motor Vehicles*, 257 Neb. 28, 594 N.W.2d 642 (1999). The guardian ad litem proceeded under the statutory authority of § 43-272.01(2) in presenting evidence and witnesses, cross-examining witnesses, and filing the petitions for termination. Thus, the trial court did not err in overruling Lisa's objection to the guardian ad litem's participation with regard to termination of her parental rights.

In addition, Lisa's argument that § 43-272.01(2)(e) as amended is unconstitutional was not properly raised on appeal. An appellate court will not consider a constitutional question unless it has been properly presented to the trial court for disposition. *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507

N.W.2d 465 (1993); *State ex rel. Sileven v. Spire*, 243 Neb. 451, 500 N.W.2d 179 (1993). We also point out that we recently considered the constitutionality of § 43-272.01(2) in *In re Interest of Kantril P. & Chenelle P.*, 257 Neb. 450, 598 N.W.2d 729 (1999), where we specifically held that § 43-272.01(2) is not rendered unconstitutional by its authorization for a guardian ad litem to perform the investigatory duties of a guardian ad litem as well as to bring and try a motion to terminate parental rights.

We next address Lisa's claim that the trial court erred in finding clear and convincing evidence to terminate her parental rights. Not only must a claimed prejudicial error be assigned, it must also be discussed in the brief of the asserting party; an appellate court will not consider assignments of error which are not discussed in the brief. *Varela v. Fisher Roofing Co.*, 253 Neb. 667, 572 N.W.2d 780 (1998). Because Lisa has not discussed this assignment of error in her brief, we will not consider it other than to note that there was clear and convincing evidence to support the order of termination.

Lisa claims the trial court erred by not requiring a written determination that continuation in the home would be contrary to the children's welfare before entering a dispositional order. This assignment of error is based upon Neb. Rev. Stat. § 43-284 (Reissue 1993), which was in effect at the time of the order removing the children from their home. At that time, § 43-284 stated in relevant part:

> The court may enter a dispositional order removing a juvenile from his or her home only upon a written determination that continuation in the home would be contrary to the welfare of such juvenile and that reasonable efforts have been made to prevent or eliminate the need for removal of the juvenile from his or her home and to make it possible for the juvenile to return.

The petition filed November 4, 1994, alleged that the children were within § 43-247(3)(a). On that same date, the trial court ordered that temporary custody of the children be placed with the department. The matter came on for adjudication on December 19, at which time the trial court determined that the children should remain in the care, custody, and control of the department for out-of-home placement. No appeal was taken

from that adjudication. The adjudication that a child is within the meaning of § 43-247(3)(a) is a final, appealable order. *In re Interest of A.C.*, 239 Neb. 734, 478 N.W.2d 1 (1991). As Lisa's assignment of error is based upon a final order which was not appealed, we do not address or consider this assignment of error.

Lisa's fourth and fifth assignments of error are essentially a claim that the trial court erred in not making reasonable efforts to reunify the family, as required by law.

On August 12, 1998, the trial court found by clear and convincing evidence that Lisa and Vernon were still unable to provide proper and necessary care for the children or to provide a safe, stable, and permanent environment. The trial court noted that the following reasonable efforts under the direction of the court had failed to give the parents the skills and ability to provide the proper and necessary care for the children and a safe and permanent environment for the children: (1) voluntary assisted services in homemaking and parenting; (2) psychological evaluation and assistance by Kimzey and other mental health professionals; (3) visits in the home; (4) visits at a department facility, with transportation provided; (5) assistance and transportation to McCook for visits and lodging expenses for visitation after Lisa relocated outside of McCook; (6) visits in Hastings to accommodate parental visitation, with transportation provided; (7) therapeutic services and financial assistance; (8) a family support provider to teach parenting skills and budgeting; (9) family support services to assist in job applications and retention assistance; (10) attendance at Educational Service Unit (ESU) meetings and assistance for the children; and (11) videos on parenting skills.

Thus, the trial court found by clear and convincing evidence that reasonable efforts and services to the parents ordered by the court had failed and that the parents had failed to correct the conditions as adjudicated in the following particulars: (1) Lisa failed to comply with the court's order regarding visitation in the following particulars—from December 30, 1996, to January 31, 1997, Lisa attended 6 out of 10 scheduled visits; from February 1 to 28, Lisa attended 4 out of 8 scheduled visits; from March 1 to 31, Lisa attended 4 out of 8 scheduled visits; and from April 1 to 30, Lisa attended 5 out of 9 scheduled visits,

with Vernon having wholly failed to comply with the visitation plans. (2) Lisa failed to comply with the court's order wherein attendance at therapy was mandated and failed to attend individual counseling sessions that were ordered per the April 8, 1996, case plan as adopted. (3) Lisa failed to follow through with the recommendations of her doctors; failed to accept and utilize therapeutic services and financial planning assistance; failed to place into practice the parenting skills that were provided; failed to obtain consistent employment and financial independence; failed to place appropriate personal boundaries and provide a safe home environment and personal relationships for the children; failed to attend physician appointments, hospital visits, and visits with ESU personnel; and failed to participate in educational classes offered.

The trial court further found by clear and convincing evidence that the children had been in an out-of-home placement for 45 consecutive months since November 4, 1994, and that after a close examination of all the evidence, there were no times during the period of foster placement that these children could have returned to a safe and stable home environment with Lisa. Finally, the trial court found by clear and convincing evidence that it was in the best interests of the children to terminate Lisa's and Vernon's parental rights and place the children in the care, custody, and control of the department.

■ In an appeal from a judgment terminating parental rights, an appellate court tries factual questions de novo on the record, which requires it to reach a conclusion independent of the findings of the trial court, but when evidence is in conflict, an appellate court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts rather than another. *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998).

■ The purpose of Neb. Rev. Stat. § 43-292(6) (Reissue 1998) is to advance the best interests of the child by giving the juvenile court power to terminate parental rights where the grounds for adjudicating the child within § 43-247(3)(a) have not been corrected. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). When parents cannot rehabilitate themselves within a reasonable time, the best interests of a child

require that a final disposition be made without delay. *In re Interest of Constance G., supra.*

Upon our de novo examination of the record, we find that the trial court correctly determined that the evidence showed clearly and convincingly that Lisa and Vernon were unable to provide proper and necessary care for the children or to provide a safe, stable, and permanent environment for the children because they failed to successfully complete the requirements necessary to provide an adequate home with adequate care for the children; that reasonable efforts and services provided to the parents by order of the court have failed; and that the parents have failed to correct the conditions set forth in the adjudication. Thus, we find by clear and convincing evidence that it is in the best interests of the children that the parental rights of Lisa be terminated.

## CONCLUSION

The judgment of the county court, sitting as a juvenile court, is affirmed.

AFFIRMED.

McCORMACK, J., participating on briefs.